**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

SUE COLBY and JAWA HODGES, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ABBOTT LABORATORIES,

Defendant.

Case No. ______________

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Sue Colby ("Colby" or the "California Plaintiff") and Jawa Hodges ("Hodges," and collectively with Colby, "Plaintiffs"), on behalf of themselves and the respective Classes defined below, bring this class action against Defendant Abbott Laboratories ("Defendant"). Plaintiffs allege matters concerning themselves and their own actions on personal knowledge and all other matters on information and belief, including their counsel's investigation, as follows:

## NATURE OF THE ACTION

1. This is a class action on behalf of consumers who purchased Glucerna® 1g Total Sugars shakes (collectively, the "Products")[1].

2. Plaintiffs and Class members, who have purchased these Products, bring this Action because Defendant made materially false and misleading representations: Defendant markets and advertises the Products as "1g Total Sugars" (the "Representations"). However, unbeknownst to reasonable consumers, the Products contain sugar in the form of allulose. Allulose

---

[1] The Products include all flavors and pack configurations of Glucerna® 1g Total Sugars shakes, including Milk Chocolate and Vanilla flavors.

is a monosaccharide and, therefore, a sugar under the applicable federal, California, and Illinois labeling standards.

3. Defendant's own labeling admits the Products contain allulose as an ingredient. "Sugars" are defined as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." 21 C.F.R. § 101.9(c)(6)(ii) (2026). The Products, therefore, contain more than the "1g Total Sugars" as claimed on the Products' packaging and advertising.

4. Defendant made its Representations about "1g Total Sugars" in its Products in order to induce health-conscious and carbohydrate-sensitive consumers, like Plaintiffs, to purchase the Products. Defendant's own online store sells the Products as "SCIENTIFICALLY DESIGNED FOR PEOPLE WITH DIABETES"—the consumers for whom an accurate sugar count matters most. However, these representations are categorically misleading and false.

5. For as long as consumable goods have been sold, "health-washing," which is the instigation of a sale of a consumer product by making it appear healthier than it is, has led consumers to buy products that either do not actually have any health benefits or are, in some cases, harmful. The instant case is a classic occurrence of health-washing. Here, Defendant uses false advertising and deceptive conduct that promises health-related benefits. To compound matters, the misrepresentations made on the Products are not only potentially harmful but command a price premium consistent with these misrepresentations that Plaintiffs and Class members would not have paid had they known that Defendant's representations are false and misleading. The Products also intentionally contain no warning whatsoever about potential risks and the tendency to cause health risks.

6. Against this backdrop, Plaintiffs, on behalf of themselves and all others similarly situated, bring this Action seeking the damages and equitable relief available under their respective

claims, including restitution, pre- and post-judgment interest, and reasonable costs and attorneys' fees under state statutes and common law doctrines due to Defendant's intentional failure to ensure that the Products were distributed, produced, and sold in a manner consistent with advertising. As a result of the foregoing, Plaintiffs and Class members (defined below) were harmed by paying a price premium for the Products which they otherwise would not have paid due to the misrepresentations made on packaging and in advertising or would not have purchased the Products at all.

## THE PARTIES

**Plaintiff Sue Colby**

7. Plaintiff Sue Colby is a citizen of California residing in Clovis, California. Plaintiff Colby purchased Defendant's Product for personal use at a Walmart Store in Clovis, California, on or about September 11, 2026. Prior to making this purchase, Plaintiff Colby saw and relied on Defendant's representations that the Products contained "1g Total Sugars."

**California Plaintiff Reliance and Continuing Interest**

8. Accordingly, these representations were part of the basis of California Plaintiff's bargain, in that California Plaintiff would not have purchased the Products on the same terms had she known that the representations were untrue. Furthermore, in making her purchase, California Plaintiff paid a price premium due to Defendant's false and misleading "1g Total Sugars" claims. California Plaintiff, however, did not receive the benefit of the bargain because the Products did not, in fact, contain only one gram of sugar. Instead, they contained several grams of allulose, a sugar. Had California Plaintiff known that Defendant's representations were false and misleading, she would not have purchased the Products or would have paid substantially less for them. California Plaintiff purchased the Products for herself for personal use during the Class Period.

California Plaintiff bought the Product because she relied on Defendant's representations, including that the Product contained "1g Total Sugars." The Products are sold at a price premium and are more expensive than other nutritional shakes. California Plaintiff relied on these misrepresentations—and had she known the truth, she would not have purchased the Products or would have paid significantly less for the Products.

9. California Plaintiff remains interested in purchasing nutritional meal-replacement shakes and other products that truly contain a low amount of sugar. However, she cannot know for certain whether the false labeling and marketing of the Products have been or will be corrected, and the Products' composition may change over time. If Defendant continues to make the Representations, California Plaintiff will be unable to make informed purchasing decisions and is likely to be misled again unless Defendant is required to ensure that the Products' marketing is accurate. California Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, or formulation of food and beverage products. Neither the California Plaintiff nor reasonable consumers have the specialized knowledge needed to determine independently whether allulose is a sugar.

**Plaintiff Jawa Hodges**

10. Plaintiff Jawa Hodges resides in Chicago, Illinois. Plaintiff Hodges purchased the Product at a Walmart Store in Chicago, Illinois, on or about July 10, 2025. Prior to making this purchase, Plaintiff Hodges saw and relied on Defendant's representations that the Products contained "1g Total Sugars."

**Defendant Abbott Laboratories**

11. Defendant Abbott Laboratories is a corporation organized under the laws of the State of Illinois, with its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois

60064, in Lake County and within this District. Defendant is a citizen of Illinois for purposes of 28 U.S.C. § 1332(c)(1).

12. At all times during the Class Period, Defendant was the manufacturer, distributor, marketer, and seller of the Products. Defendant owns the GLUCERNA® brand and manufactures and distributes the Products through Abbott Nutrition. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through California and Illinois.

## JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; the proposed Classes together include at least 100 members; and minimal diversity exists. California Plaintiff Colby is a citizen of California, while Defendant is a citizen of Illinois because it is incorporated in Illinois and maintains its principal place of business there. 28 U.S.C. § 1332(c)(1), (d)(2)(A), (d)(5)(B), and (d)(6).

14. To the extent necessary, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 over related state-law claims that form part of the same case or controversy as the claims within the Court's original jurisdiction.

15. This Court has general personal jurisdiction over Defendant because Defendant is incorporated in Illinois and maintains its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois 60064, within this District. Defendant is therefore at home in Illinois and subject to this Court's jurisdiction with respect to Plaintiffs' claims.

16. Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (c)(2), and (d) because Defendant is the sole defendant, resides in Illinois, and maintains its principal place of

business in this District. Defendant's headquarters are in Lake County, Illinois, within the Eastern Division of this District. 28 U.S.C. § 93(a)(1).

## FACTUAL BACKGROUND

### Consumers Seek Out and Pay More for Products That Contain No Sugars

17. It is well known that consuming added sugar can present a variety of dangerous health conditions, such as obesity, diabetes, and cardiovascular disease—indeed, the "right amount of added sugar" is "[a]s little as possible."[2] Desserts and sweet snacks account for 19% of added sugars in Americans' diets.[3] Sugar-sweetened beverages are by far the top source of added sugars for Americans.[4]

18. For decades, federal health authorities have recommended limiting added sugar intake.[5] In light of this clear, long-standing guidance from medical authorities, consumer demand for low- and no-sugar products has grown substantially. Recent surveys report that 75% of U.S. consumers and 83% of consumers globally are limiting or avoiding sugar in their diets.[6]

---

[2] *The Sweet Danger of Sugar*, Harv. Health Publ'g (Apr. 6, 2026), https://www.health.harvard.edu/diabetes-and-metabolic-health/the-sweet-danger-of-sugar (reviewed by Mallika Marshall, M.D.).

[3] U.S. Dep't of Agric. & U.S. Dep't of Health & Hum. Servs., *Dietary Guidelines for Americans, 2020–2025*, at 43 fig. 1-10 (9th ed. Dec. 2020), https://www.dietaryguidelines.gov/sites/default/files/2021-03/Dietary_Guidelines_for_Americans-2020-2025.pdf#page=56.

[4] *Id.*

[5] *See, e.g.*, U.S. Dep't of Health & Hum. Servs., *The Surgeon General's Call to Action to Prevent and Decrease Overweight and Obesity* 35 (2001), https://stacks.cdc.gov/view/cdc/28023/cdc_28023_DS1.pdf; U.S. Dep't of Health & Hum. Servs., Office of the Surgeon General, *The Surgeon General's Vision for a Healthy and Fit Nation: Background on Obesity* (Jan. 2010), https://www.ncbi.nlm.nih.gov/books/NBK44656/.

[6] *See* Int'l Food Info. Council, *2025 IFIC Food & Health Survey: A Focus on Sugars & Sweeteners* 5, 9 (Dec. 3, 2025), https://ific.org/wp-content/uploads/2025-IFIC-Food-Health-Survey-Sugars-Sweeteners.pdf (reporting that 75% of surveyed Americans were trying to limit or avoid sugar); ADM, *ADM Launches Sweet Insights Tool for Navigating Sugar Reduction Trends, Worldwide*, https://www.adm.com/en-us/news/adm-stories/adm-launches-sweet-insights-tool-for-navigating-sugar-reduction-trends-worldwide (last visited Nov. 6, 2026) (reporting that 83% of 13,900 surveyed consumers across 15 countries were limiting or avoiding sugar).

19. Food and beverage manufacturers are acutely aware of this demand and of the premium consumers will pay to satisfy it. Products labeled "sugar free" and "zero sugar" command higher prices than comparable products that do not bear those claims, and manufacturers reserve the front principal display panel of their packaging for the claims they believe will most motivate a purchase.

20. Defendant has capitalized on that demand. It markets Products that contain allulose, a sugar, while labeling and advertising them as "1g Total Sugars." Defendant thereby obtained an unfair competitive advantage over competitors whose sugar-content claims are true, at the expense of unwitting consumers.

**<u>Defendant's False and Misleading Representations</u>**

21. Defendant manufactures, markets, and sells Glucerna® 1g Total Sugars shakes. The Products are sold in 10 fl. oz. bottles, both individually and in multi-packs, at major retailers throughout California, Illinois, and the United States, including Walmart, Walgreens, Target, Safeway, Kroger, and grocery stores, as well as online through Defendant's own website (abbottstore.com) and third-party marketplaces such as Amazon.com.

22. Below is an illustrative sampling of the Products and the Representations:






**Nutrition Facts**

| Serving size | 10 fl oz (296 mL) |
|---|---|
| Amount per serving | |
| **Calories** | **180** |
| | % DV* |
| **Total Fat** 10g | 13% |
| Saturated Fat 1.5g | 8% |
| *Trans* Fat 0g | |
| Polyunsaturated Fat 3g | |
| Monounsaturated Fat 5g | |
| **Cholesterol** 10mg | 3% |
| **Sodium** 300mg | 13% |
| **Total Carbohydrate** 14g | 5% |
| Dietary Fiber 4g | 14% |
| Total Sugars 1g | |
| Includes 0g Added Sugars | 0% |
| **Protein** 15g | 30% |

Vitamin D 12mcg 60% • Calcium 330mg 25% • Iron 4.5mg 25%
Potassium 330mg 6% • Vitamin A 25% • Vitamin C 100%
Vitamin E 50% • Vitamin K 30% • Thiamin 35% • Riboflavin 30%
Niacin 25% • Vitamin $B_6$ 35% • Folate (72mcg Folic Acid) 30%
Vitamin $B_{12}$ 25% • Biotin 25% • Pantothenic Acid 30%
Phosphorus 25% • Iodine 25% • Magnesium 25% • Zinc 30%
Selenium 25% • Copper 25% • Manganese 20% • Chromium 50%
Molybdenum 40% • Chloride 10% • Choline 25%

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

23. The "1g Total Sugars" claim is one of the key design elements of the Products. On the front wrapping of the Products, both on the bottle itself and on its cap, Defendant prominently states that the Product contains "1g Total Sugars."

24. Defendant's advertising repeats these claims across every marketing channel. On Defendant's own website, Defendant repeatedly advertises the Products as containing "1g Total Sugars." True and correct screenshots from Defendant's official website are reproduced below:[7]




[7] *See Glucerna 1g Total Sugars, Glucerna*, https://www.glucerna.com/nutrition-products/glucerna-1g-total-sugars-chocolate (last visited Oct. 23, 2026).

25. Defendant, however, acknowledged the Products contained allulose as part of their ingredients. True and correct screenshots from Defendant's official website are reproduced below:[8]




26. Defendant nonetheless disseminated the Representations through the Products' packaging, its own website, Amazon.com, Walmart.com, and other online marketing. On Walmart.com, one of the "Key item features" advertises the Products as having "1g Total Sugars."

[8] *See id.*

Moreover, the Product is specifically targeted toward people with diabetes. True and correct screenshots from Defendant's official Walmart.com brand content are reproduced below:[9]

**Key item features**

- Glucerna is scientifically designed for people with diabetes
- Has CARBSTEADY, a unique blend of low-glycemic carbs
- Has 1g total sugars to help manage sugar intake
- Has 15 grams of protein to help support muscle and manage hunger
- 1g Total Sugars makes a delicious snack replacement†
- #1 doctor-recommended nutrition brand for people with diabetes

View all item details

[9] Walmart.com, https://www.walmart.com/ip/Glucerna-1g-Sugar-Chocolate-10oz/15664373314 (last visited Oct. 24, 2026).

27. Defendant similarly disseminates the Representations through its official Amazon.com listings. As depicted below, the Product's headline states it contains "1g Total Sugars." Likewise, the Product's description reiterates it contains "1g sugar."[10]




28. The Representations communicate to reasonable consumers that the Products contain, in total, only 1g of sugar. That is the plain and ordinary meaning of "1g Total Sugars." Federal, California, and Illinois law prescribe an objective standard governing when those terms may be used.

29. "1g Total Sugars" is an absolute, objective, and quantitative claim concerning a measurable physical attribute of the Products. Defendant's front-of-package claim is an express nutrient content claim governed by 21 C.F.R. § 101.13(b), (b)(1), and (i)(3) (2026). Those regulations require any sugar claim made outside the Nutrition Facts panel to comply with the regulatory definition of "sugars" in 21 C.F.R. § 101.9(c)(6)(ii) and permit a statement of the amount of a nutrient only if the statement "is not false or misleading in any respect." 21 C.F.R. § 101.13(i)(3).

---

[10] Amazon.com, https://a.co/d/0iwHhVgG (last visited Oct. 23, 2026).

**Allulose Is a Sugar**

30. As a monosaccharide, allulose falls squarely within the codified definition of sugar adopted by the Food and Drug Administration ("FDA"). 21 C.F.R. § 101.9(c)(6)(ii) (defining "Total sugars" as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)"). Consistent with that definition, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[11] FDA has not completed such rulemaking.

31. FDA's nonbinding guidance, *The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry* (Oct. 2020) (the "Allulose Guidance") does not change that answer. The guidance announces enforcement discretion, pending rulemaking, for excluding allulose from the gram amounts of Total Sugars and Added Sugars declared within the Nutrition Facts panel. It does not amend § 101.9(c)(6)(ii), does not address statements of amount made outside the panel under 21 C.F.R. § 101.13(i)(3), and does not authorize a front-of-package representation that a product containing several grams of allulose contains "1g Total Sugars."

32. The Seventh Circuit has resolved the question. In *Franco v. Chobani, LLC*, it held that § 101.9(c)(6)(ii) unambiguously includes every monosaccharide, including allulose; that the Allulose Guidance announced an enforcement policy rather than interpreting or amending the regulation; and that parallel state-law claims challenging a sugar claim on a product containing allulose were not expressly preempted. 184 F.4th 599, 604–07 (7th Cir. 2026). FDA itself told the Seventh Circuit that the regulation's text is unambiguous and includes allulose. *Id.*

[11] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,795–96 (May 27, 2016).

33. The industry also recognizes that allulose is a sugar. Indeed, one of the leading manufacturers of commercial-grade allulose has acknowledged that "[a]llulose is a monosaccharide, or simple sugar"[12] and has noted in multiple FDA filings that "[a]llulose is a monosaccharide and is classified as a sugar."[13] Numerous medical and health-focused websites consistently refer to allulose as a "naturally occurring sugar."[14]

34. Not only is allulose a sugar, but its use as an additive can cause gastrointestinal effects such as nausea, bloating, diarrhea, and abdominal pain.[15] A clinical trial of healthy young adults on the gastrointestinal tolerance of allulose determined that, compared to traditional cane sugar, consumption of allulose resulted in significantly higher frequencies of symptoms of diarrhea, abdominal distention, and abdominal pain, and that increasing the level of ingested allulose resulted in incidences of severe nausea, abdominal pain, headache, anorexia, and diarrheal symptoms.[16]

35. The Products violate the FDA Nutrient Content Regulations. Congress empowered the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic

---

[12] Tate & Lyle Ingredients Americas LLC, *Allulose: A Monosaccharide or Simple Sugar* 6 (Aug. 13, 2018), https://www.regulations.gov/document/FDA-2015-P-1201-0014 ("Allulose is a monosaccharide, or simple sugar, that naturally presents in small quantities in fruits like figs and raisins and a variety of sweet foods like caramel sauce, maple syrup and brown sugar.").

[13] Citizen Petition from Tate & Lyle Ingredients Americas LLC to the U.S. Food & Drug Admin., *Citizen Petition Requesting that Allulose Be Exempt from Being Included as a Carbohydrate, Sugar, or Added Sugar in the Nutrition Facts Label on Foods and Beverages* (Apr. 10, 2015), FDA Docket No. FDA-2015-P-1201, https://www.regulations.gov/docket/FDA-2015-P-1201.

[14] *See, e.g.*, Cleveland Clinic, *What You Need to Know About Allulose* (Nov. 4, 2024), https://health.clevelandclinic.org/what-is-allulose (last visited Aug. 28, 2026).

[15] Ctr. for Sci. in the Pub. Int., *Comments Regarding the Declaration of Allulose on Nutrition and Supplement Facts Labels* (June 17, 2019), https://cspinet.org/sites/default/files/attachment/allulose%20final%20from%20CSPI.pdf.

[16] Youngji Han et al., *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial*, 10 Nutrients, art. 2010, at 6–10 (2018), https://doi.org/10.3390/nu10122010.

Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 et seq. FDA promulgated the relevant food-labeling regulations in 21 C.F.R. pt. 101.

36. FDA regulations distinguish mandatory or permitted declarations within the Nutrition Facts panel from nutrient-content claims appearing elsewhere on a label or in labeling. Information appearing as part of the Nutrition Facts panel is not itself a nutrient-content claim. 21 C.F.R. § 101.13(c). But "[i]f such information is declared elsewhere on the label or in labeling, it is a nutrient content claim and is subject to the requirements for nutrient content claims." *Id.* By contrast, Defendant's separate "1g Total Sugars" representations expressly characterize the level of sugar in the Products and are nutrient-content claims governed by 21 C.F.R. § 101.13(b).

37. The "1g Total Sugars" statements on the Products' packages and other labeling are nutrient-content claims because they expressly characterize the level of sugar. 21 C.F.R. § 101.13(b). Defendant's advertisements repeat the same challenged message and are also alleged as misleading under applicable state law.

38. Nutrient-content claims are strictly forbidden unless specifically allowed under FDA regulations. 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D . . . .").

39. The Products do not comply with these regulations. Section 101.9(c)(6)(ii) defines total sugars as the sum of all free mono- and disaccharides, including glucose, fructose, lactose, and sucrose. Allulose, as a monosaccharide epimer of fructose, falls within that definition. Plaintiffs allege that the allulose in the Products must therefore be counted when evaluating

whether the separate "1g Total Sugars" Representations are truthful and not misleading under 21 C.F.R. § 101.13(i)(3).

40. By Defendant's own admission on the Products' labels, allulose is one of the ingredients present in each Product. The ingredients list allulose, along with the following full-calorie carbohydrates: glycerin and cocoa powder (Milk Chocolate flavor) and corn maltodextrin (Vanilla flavor).

41. Allulose must also be included in a product's Total Carbohydrate declaration on the Nutrition Facts panel, which is calculated by difference under 21 C.F.R. § 101.9(c)(6) ("Total carbohydrate content shall be calculated by subtraction of the sum of the crude protein, total fat, moisture, and ash from the total weight of the food.").

42. Total Carbohydrate is, in turn, composed of several mandatory subcomponents, each independently defined by FDA regulation: (a) "Dietary Fiber," defined at 21 C.F.R. § 101.9(c)(6)(i) as non-digestible soluble and insoluble carbohydrates, lignin intrinsic to plants, and isolated or synthetic non-digestible carbohydrates that FDA has determined to have a beneficial physiological effect; (b) "Total Sugars," defined at 21 C.F.R. § 101.9(c)(6)(ii) as the sum of all free mono- and disaccharide sugars in a serving; (c) "Added Sugars," defined at 21 C.F.R. § 101.9(c)(6)(iii) as sugars that are either added during the processing of foods or packaged as such; and (d) "Sugar Alcohol," such as erythritol and sorbitol, which is already captured within Total Carbohydrate under the by-difference calculation.

43. Though Defendant omits allulose from the Total Sugars line, allulose remains within the Products' Total Carbohydrate figure under the by-difference calculation. The Products' allulose content, therefore, is an uncaptured residual once Dietary Fiber, Total Sugars, and Sugar Alcohol are subtracted from Total Carbohydrate.

44. Applying the by-difference calculation to the Products yields the following results. For the Vanilla flavor: Total Carbohydrate (14g) – Dietary Fiber (4g) – Total Sugars (1g) – Sugar Alcohol (0g) = approximately 9g of carbohydrates left unaccounted for. For the Milk Chocolate flavor: Total Carbohydrate (14g) − Dietary Fiber (6g) − Total Sugars (1g) − Sugar Alcohol (0g) = approximately 7g of carbohydrates left unaccounted for.

45. These grams of unaccounted-for carbohydrates consist of allulose and the other residual carbohydrate contributors mentioned above (glycerin and cocoa powder for the Milk Chocolate flavor, and corn maltodextrin for the Vanilla flavor).

46. Using the 4-4-9 method to calculate total calories, as permitted by 21 C.F.R. § 101.9(c)(1)(i)(C) ("[u]sing the general factors of 4, 4, and 9 calories per gram for protein, total carbohydrate (less the amount of non-digestible carbohydrates and sugar alcohols), and total fat, respectively, … [a] general factor of 2 calories per gram for soluble non-digestible carbohydrates shall be used . . ."), an approximate allulose amount can be determined.

47. Each flavor declares 180 calories. Using the 4-4-9 method, the 10g of fat would equal 90 calories, while the 15g of protein would equal 60 calories. This leaves approximately 30 calories attributable to carbohydrates in each flavor. Because FDA's rounding rules permit modest variance in each declared value, the figures below are approximations; testing and discovery will establish the precise allulose content.

48. For the Vanilla flavor, 12 calories attributable to declared carbohydrates must be subtracted from the 30 remaining calories (4 calories based on the 1g of declared sugar and 8 calories based on the declared 4g of dietary fiber). Eighteen (18) calories are now attributable to the 9g of unaccounted-for carbohydrates.

49. Similarly, for the Milk Chocolate flavor, 16 calories attributable to declared carbohydrates must be subtracted from the 30 remaining calories (4 calories based on the 1g of declared sugar and 12 calories based on the declared 6g of dietary fiber). Fourteen (14) calories are now attributable to the 7g of unaccounted-for carbohydrates.

50. The unaccounted-for carbohydrate grams can now be split into two unknown variables. Let $x$ be ordinarily digestible carbohydrates (modeled at 4 calories per gram), and let $y$ be allulose (modeled at 0.4 calories per gram). *See Allulose Guidance*.

51. For the Vanilla flavor: $x + y = 9$ unaccounted-for grams; $4x + 0.4y = 18$ calories. Solving these equations, $x = 4$ grams of ordinary carbohydrates and $y = 5$ grams of allulose.

52. For the Milk Chocolate flavor, $x + y = 7$ unaccounted-for grams; $4x + 0.4y = 14$ calories. Solving these equations, $x = 3.11$ grams of ordinary carbohydrates and $y = 3.89$ grams of allulose.

53. Since 21 C.F.R. § 101.9(c)(6)(ii) defines "Total sugars" as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)," and allulose falls squarely within that definition, Defendant has misrepresented the total sugar content of its Products by not including the approximately 5 grams and 3.89 grams of allulose present in its Vanilla and Milk Chocolate flavors, respectively.

54. The average consumer who noticed allulose on the ingredient list would be compelled to believe it was not a sugar, based on Defendant's repeated "1g Total Sugars" Representations.

55. Because the Products' labels include deceptive and impermissible nutrient-content claims, the Products are "misbranded" under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A).

56. Plaintiffs do not seek to enforce the FDCA directly or assert standalone claims under the state food-labeling statutes. The California Plaintiff seeks relief under California consumer-protection law and common law, and Hodges seeks relief under Illinois consumer-protection law and common law. The federal and state food-labeling provisions identify the standards supporting their allegations that the Representations are false and misleading. Plaintiffs' claims do not seek to impose any labeling requirement different from or additional to federal law. *See Franco*, 184 F.4th at 606–07.

**<u>Defendant's Conduct Violates California's Food Labeling Laws</u>**

57. Defendant's marketing, advertising, distribution, and sale of the Products violate the misbranding provisions of California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), which adopts federal food-labeling regulations as California regulations. Cal. Health & Safety Code § 110100(a); *see also id.* § 110670.

58. Defendant's marketing, advertising, distribution, and sale of the Products violate the Sherman Law's misbranding provisions, including:

(a) Section 110660 (a food is misbranded if its labeling is false or misleading in any particular);

(b) Section 110670 (a food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims set forth in 21 U.S.C. § 343(r));

(c) Section 110760 (making it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded);

(d) Section 110765 (making it unlawful for any person to misbrand any food); and

(e) Section 110770 (making it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food).

59. Defendant's marketing, advertising, distribution, and sale of the Products also violate the Sherman Law's false-advertising provisions, including:

(a) Section 109885, which defines "advertisement" to include representations on products and their packages, and Section 110390, which prohibits dissemination of food advertisements that are false or misleading in any particular;

(b) Section 110395 (making it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food);

(c) Sections 110398 and 110400 (making it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised).

60. Because the Products bear "1g Total Sugars" nutrient-content claims despite containing or having contained several times that amount, depending on the variant, the Products are misbranded under California law, and Defendant's advertising, distribution, and sale of the Products are unlawful.

**<u>Defendant's Conduct Violates Illinois' Food Labeling Laws</u>**

61. The Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 Ill. Comp. Stat. 620/1 et seq., prohibits misbranding food sold in Illinois. Section 11(a) deems food misbranded when its labeling is false or misleading in any particular. 410 Ill. Comp. Stat. 620/11(a).

62. In deciding whether labeling or advertising is misleading, Illinois law considers both affirmative representations and omitted material facts in light of those representations and the customary or represented conditions of use. 410 Ill. Comp. Stat. 620/2.11.

63. The IFDCA provides for conformity with federal regulations and provides that federal regulations automatically adopted under the Act become effective in Illinois when they become effective federally. 410 Ill. Comp. Stat. 620/21(a), (j). The federal labeling standards

discussed above inform Hodges's allegations concerning the separate "1g Total Sugars" Representations.

64. Illinois law prohibits the manufacture, sale, delivery, holding or offering for sale of misbranded food; the misbranding of food; and the receipt and delivery of misbranded food in commerce. 410 Ill. Comp. Stat. 620/3, 620/3.1–3.3. It also prohibits dissemination of false advertisements and deems food advertising false when it is false or misleading in any particular. 410 Ill. Comp. Stat. 620/3.5, 620/20(a).

65. Defendant represents that the Products contain "1g Total Sugars" despite their alleged additional allulose content described above. Hodges alleges that the Representations misstate the Products' sugar content and omit material facts necessary to avoid misleading reasonable consumers. Accordingly, the Products sold in Illinois bearing the Representations are misbranded under the IFDCA, and the challenged advertising is false or misleading under Illinois law.

**Reasonable Consumers Would Be Misled by Defendant's Deception**

66. Reasonable consumers have no reason to look at the back label of the Products when presented with the conspicuous representation (on the front of the package and on marketing materials) that the Products contain "1g Total Sugars." Consumers are not expected to look beyond misleading representations on the front of the package to discover that those representations are false.

67. A consumer who turns to the Nutrition Facts panel finds the same "1g" figure, because Defendant excludes allulose there too. The panel therefore repeats, rather than corrects, the front-of-package Representation. Plaintiffs do not challenge the Nutrition Facts panel; they

challenge the separate Representations made outside it. Moreover, Defendant does not disclose that allulose is, in fact, a sugar.

68. Consumers are not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry. Defendant is responsible for ensuring that its express labeling and marketing claims are truthful and not misleading.

**Defendant Knew the Representations Were False**

69. Defendant knew, or should have known, that the Representations were false, misleading, deceptive, and unlawful when it marketed, advertised, labeled, distributed, and sold the Products. Specifically, Defendant knew that: (a) the Products contain allulose; (b) allulose is a sugar; (c) its labels represented that the Products contained 1 gram of sugar; (d) reasonable consumers would rely on those labels when purchasing; (e) consumers would not receive the represented benefit of the bargain; and (f) the Representations enabled Defendant to charge a premium for Products containing sugar.

70. Defendant explicitly and specifically markets its nutritional products toward people with diabetes and other consumers concerned about blood sugar, charging a price premium for its Products. Defendant knew or should have known of allulose's regulatory classification as a sugar and should have disclosed that classification in light of its target market.

71. Defendant, as the marketer and distributor of the Products, controlled, or participated in, making the Representations on the Products' labels and advertisements. Defendant could have stopped using the Representations or ensured that they were true. Despite its knowledge

that consumers reasonably rely on the Representations, Defendant chose to continue using them, thereby causing consumers to buy or overpay for the Products.

**Defendant's "1g Total Sugars" Claims Injured Plaintiffs and the Class**

72. Defendant concealed or failed to disclose material facts about the Products, including: (a) the true nature of the Products' ingredients; (b) the fact that allulose is a sugar; (c) the fact that each serving contains or has contained a significant amount of allulose; (d) the fact that the Products do not contain "1g Total Sugars"; and (e) the fact that the Products are misbranded under federal law and the applicable California or Illinois law when sold bearing the Representations.

73. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Plaintiffs and members of the respective Classes were injured because they: (a) paid money for Products that were not as represented; (b) paid a price premium for those Products; (c) were deprived of the benefit of their bargain; (d) purchased Products worth less than represented; and (e) purchased Products containing more sugar than the one gram per serving represented on the packaging. Had they known the truth, they would have paid less for the Products or would not have purchased them.

74. Accordingly, Plaintiffs and the Class Members suffered injury in fact and lost money or property because of Defendant's wrongful conduct.

**Equitable and Alternative Relief**

75. California Plaintiff lacks an adequate remedy at law for the future harm described above. Damages cannot remedy California Plaintiff's inability to rely on Defendant's Representations when deciding whether to purchase the Products in the future. Only injunctive

relief requiring Defendant to cease or correct the misleading Representations can address that prospective harm.

76. Equitable relief is also necessary because legal remedies may prove inadequate to provide complete relief, including restitution measured by the difference between the prices California Plaintiff and California Class Members paid and the value of the Products as received, and disgorgement of revenues Defendant unfairly obtained, which are equitable remedies not necessarily coextensive with damages.

77. Equitable relief is additionally appropriate because the statutes of limitations for the asserted causes of action vary. The UCL carries a four-year limitations period, which may reach purchases not fully remediable under other causes of action.

78. The scope of actionable misconduct under the FAL and UCL is also broader than under the other causes of action asserted herein. The FAL and UCL prohibit Defendant's fraudulent marketing scheme. California Plaintiff's other claims are more limited, focusing on duties arising from Defendant's Representations at the point of purchase. The UCL may also borrow statutory prohibitions that do not themselves create a private cause of action.

79. Hodges seeks damages under the ICFA and pleads unjust enrichment in the alternative under Illinois law, as permitted by Federal Rule of Civil Procedure 8(d). Hodges seeks prospective relief only to the extent the facts establish a real and immediate threat of future injury and the requirements for such relief are satisfied. No Plaintiff seeks duplicative recovery for the same injury.

## CLASS ACTION ALLEGATIONS

80. Plaintiffs bring this action under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), individually and on behalf of the following proposed classes (collectively, the "Classes,"

and each a "Class"). Colby seeks to represent the California Class, and Hodges seeks to represent the Illinois Class:

**California Class:**

> All persons who purchased Defendant's Products bearing the "1g Total Sugars" Representations in California for personal, family, or household use, and not for resale, during the applicable limitations period through the date of class certification.

**Illinois Class:**

> All persons who purchased Defendant's Products bearing the "1g Total Sugars" Representations in Illinois for personal, family, or household use, and not for resale, during the applicable limitations period through the date of class certification.

81. Excluded from both Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, councils and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

82. Plaintiffs reserve the right to amend the above Class definitions or to propose subclasses in subsequent pleadings and motions for class certification.

83. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

84. Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy, as the members of the Class are so numerous that joinder of all members is impracticable. Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

85. Commonality: Plaintiffs and members of their respective Classes share common questions of fact and law, including the following questions to be evaluated under the law governing each Class:

a. Whether allulose is a sugar;

b. Whether the Products contained "1g Total Sugars";

c. Whether reasonable consumers would understand Defendant's representations and warranties concerning the Products to be untrue and misleading;

d. Whether Defendant's representations and warranties were material;

e. Whether the Products are misbranded under federal law and, for each Class, the applicable California or Illinois labeling law;

f. Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

g. Whether Plaintiffs and the members of the Classes have suffered damages as a result of Defendant's actions and the amount of those damages;

h. Whether Plaintiffs and members of the respective Classes are entitled to the damages or equitable relief available under their respective causes of action; and

i. Whether Plaintiffs and the members of the Classes are entitled to attorneys' fees and costs.

86. Typicality: Colby's claims are typical of the California Class's claims, and Hodges's claims are typical of the Illinois Class's claims. Each claim arises from the challenged "1g Total Sugars" Representations and the resulting economic injury alleged above, under the law governing the respective Class.

87. Adequacy of Representation: Colby seeks to represent the California Class, and Hodges seeks to represent the Illinois Class. Each Plaintiff shares the interests of the respective Class, is committed to vigorous prosecution of this action, and has retained counsel experienced in litigation of this nature.

88. Plaintiffs and their counsel will fairly and adequately protect the interests of the respective Classes.

89. Superiority of Class Action: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

90. The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

91. This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety.

92. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly, and Plaintiffs' challenge of these policies and practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiffs.

93. Unless a Class-wide injunction is issued, Defendant may continue to act unlawfully as set forth in this Complaint.

94. Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Federal Rule of Civil Procedure 23.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### Unjust Enrichment / Restitution

**(On Behalf of the California Plaintiff and California Class Under California Law, and Jawa Hodges and the Illinois Class Under Illinois Law)**

95. Plaintiffs incorporate the preceding factual and class allegations to the extent relevant to their respective state-law claims as though fully set forth herein.

96. Colby brings this claim on behalf of herself and the California Class under California law as a claim for restitution based on unjust enrichment or quasi-contract. Hodges brings this claim on behalf of herself and the Illinois Class under Illinois common law. Each Plaintiff seeks relief under the law applicable to that Plaintiff's respective Class.

97. Plaintiffs plead this claim in the alternative under Federal Rule of Civil Procedure 8(d), to the extent the applicable state law permits recovery and no enforceable contract governs the subject matter of the claim. Plaintiffs do not seek duplicative recovery.

98. Plaintiffs and members of the respective Classes conferred financial benefits on Defendant through their retail purchases of the Products. Defendant received revenues from the sale and distribution of the Products purchased by consumers, even where the purchases were made through retailers.

99. Defendant knew of, accepted, and retained those benefits.

100. Defendant's retention of those benefits is unjust because the sales and resulting revenues were induced by the misleading "1g Total Sugars" Representations and material omissions alleged above. Plaintiffs and Class Members paid for Products that were worth less than represented and paid a premium they would not otherwise have paid.

101. Under California law, the California Plaintiff seeks restitution of benefits Defendant unjustly obtained at her and the California Class's expense through the challenged Representations and omissions.

102. Under Illinois law, Defendant's retention of benefits obtained through that deception is detrimental to Hodges and Illinois Class Members and violates fundamental principles of justice, equity, and good conscience.

103. Plaintiffs and members of the respective Classes seek restitution of benefits unjustly retained at their expense, and any further relief available under the law governing their respective claims, in amounts to be determined at trial.

104. The claim rests on Defendant's deceptive conduct in procuring and retaining the benefits alleged above, including revenues received through retailers from purchases induced by the challenged Representations.

105. As a direct and proximate result of the alleged conduct, Plaintiffs and members of the respective Classes suffered injury in fact and lost money.

106. The California Plaintiff seeks equitable restitution to the extent she establishes that an adequate remedy at law is unavailable. Hodges seeks restitution to the extent available under Illinois law, in the alternative to ICFA damages.

107. To the extent an award under another count compensates a Plaintiff or Class Member for the same loss, any recovery under this count shall be reduced as necessary to prevent duplicate recovery.

**SECOND CAUSE OF ACTION**

**Violation of California's Consumers Legal Remedies Act ("CLRA")**

**Cal. Civ. Code § 1750 et seq.**

**(On Behalf of California Plaintiff and the California Class)**

108. The California Plaintiff realleges and incorporates the preceding factual and class allegations to the extent relevant to her California claims as though fully set forth herein.

109. The California Plaintiff and California Class Members are consumers, the Products are goods, and the purchases at issue are transactions within the meaning of Cal. Civ. Code § 1761(a), (d), and (e).

110. California Plaintiff brings this claim on behalf of herself and the California Class against Defendant.

111. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have."

112. Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

113. Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

114. Defendant profited from sales of the falsely and deceptively advertised Products by representing that the Products contain "1g Total Sugars," even though they contain allulose, which increases the total sugar content above the disclosed amount.

115. Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

116. Pursuant to Cal. Civ. Code § 1782(d), the California Plaintiff seeks injunctive relief under this CLRA count. She does not presently seek damages, restitution, or other monetary relief under the CLRA, apart from any recoverable attorneys' fees and costs.

117. The California Plaintiff reserves the right to amend this complaint to seek CLRA damages after satisfying the notice and timing requirements of Cal. Civ. Code § 1782. The California Plaintiff's declaration under Cal. Civ. Code § 1780(d), stating facts showing that this action has been commenced in a proper place for trial, is filed concurrently with this Complaint as Exhibit A.

118. The California Plaintiff seeks an order enjoining Defendant from continuing the misleading Representations, to the extent the requirements for injunctive relief are satisfied, and reasonable attorneys' fees and costs under Cal. Civ. Code § 1780(e).

119. The California Plaintiff's requests for monetary relief under other counts do not seek monetary relief under this CLRA count.

## THIRD CAUSE OF ACTION

## Violation of California's False Advertising Law ("FAL")

## Cal. Bus. & Prof. Code § 17500

## (On Behalf of California Plaintiff and the California Class)

120. The California Plaintiff realleges and incorporates the preceding factual and class allegations to the extent relevant to her California claims as though fully set forth herein.

121. California Plaintiff brings this claim on behalf of herself and the California Class against Defendant.

122. Defendant's acts and practices, as described herein, have deceived or are likely to deceive members of the California Class and the public. Defendant represents that the Products contain "1g Total Sugars," even though they contain significant amounts of allulose per serving, which increases the total sugar content above the disclosed amount.

123. Defendant has disseminated uniform advertising regarding the Products throughout California and the United States. The advertising was unfair, deceptive, untrue, or misleading within the meaning of Cal. Bus. & Prof. Code § 17500 and was intended and likely to deceive consumers. Defendant's above-described advertising is likely to deceive because Defendant affirmatively represents that the Products contain "1g Total Sugars."

124. In making and disseminating these statements, Defendant knew, or should have known, that its advertising was untrue or misleading. California Plaintiff and the California Class based their purchasing decisions on Defendant's materially false Representations and were injured in fact and lost money or property as a result.

125. Defendant's misrepresentations concerning the material facts described above constitute false and misleading advertising and therefore violate Cal. Bus. & Prof. Code § 17500 et seq.

126. Under Cal. Bus. & Prof. Code § 17535, the California Plaintiff and California Class seek restitution and appropriate injunctive relief. They seek attorneys' fees and costs under Cal. Civ. Proc. Code § 1021.5 and other applicable law to the extent its requirements are satisfied.

**FOURTH CAUSE OF ACTION**

**Violation of California's Unfair Competition Law ("UCL")**

**Cal. Bus. & Prof. Code § 17200 et seq.**

**(On Behalf of California Plaintiff and the California Class)**

127. The California Plaintiff realleges and incorporates the preceding factual and class allegations to the extent relevant to her California claims as though fully set forth herein.

128. California Plaintiff brings this claim individually and on behalf of the California Class against Defendant.

129. Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210, by engaging in unfair, fraudulent, and unlawful business practices.

130. California Plaintiff has standing to pursue this claim because she suffered an injury in fact and lost money or property as a result of Defendant's conduct. California Plaintiff purchased the Products for personal use, relied on Defendant's representation that they contained "1g Total Sugars," and spent money she otherwise would not have spent had she known the Products contained significant amounts of allulose per serving.

131. The UCL defines unfair competition to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any

act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on that person's own behalf or on behalf of others similarly situated who are affected by the unlawful or unfair business practice or act.

132. Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to Cal. Bus. & Prof. Code § 17200 et seq.

133. Defendant violated the UCL's proscription against engaging in Unlawful Business Practices through its violations of the FAL, Cal. Bus. & Prof. Code § 17500 et seq.; the CLRA, Cal. Civ. Code § 1770 et seq.; the Sherman Law, including, without limitation, Cal. Health & Safety Code §§ 110100, 110390, 110395, 110398, 110400, 110660, 110670, 110760, 110765, and 110770; and the federal food labeling requirements adopted by the Sherman Law, including 21 U.S.C. § 343(a)(1) and (r)(1)(A) and 21 C.F.R. §§ 101.9(c)(6)(ii) and 101.13.

134. Defendant has also violated the UCL's proscription against engaging in Unfair Business Practices. Defendant's acts, omissions, misrepresentations, practices, and nondisclosures as alleged herein also constitute unfair business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200 et seq. Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous. The gravity of Defendant's conduct outweighs any alleged benefits attributable to it. There is no utility in representing that the Products contain only one gram of total sugars when they allegedly contain additional sugar in the

form of allulose. Furthermore, Defendant's false and misleading representations are detrimental to competitors offering nutritional shakes that either do not make similar claims or do not contradict those claims by sweetening their products with sugar. Defendant's misrepresentations and omissions therefore harm consumers and the market as a whole.

135. California Plaintiff and the California Class Members suffered substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omissions about the presence and amount of sugar in the Products. The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefor, particularly considering the available legal alternatives in the marketplace. Such conduct is immoral, unethical, or unscrupulous; it offends established public policy and is substantially injurious to California Plaintiff and the California Class Members.

136. California Plaintiff and the California Class Members could not have reasonably avoided their injuries or known that the Products' prominent labeling and marketing were inaccurate. Furthermore, consumers lack the specialized knowledge to determine whether an ingredient such as allulose is a sugar. As such, they could not have reasonably avoided the injury they suffered.

137. Under Cal. Bus. & Prof. Code § 17203, the California Plaintiff and California Class seek restitution and appropriate injunctive relief. They seek attorneys' fees and costs under Cal. Civ. Proc. Code § 1021.5 and other applicable law to the extent its requirements are satisfied.

**FIFTH CAUSE OF ACTION**

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")**

**815 Ill. Comp. Stat. 505/1 et seq.**

**(On Behalf of Jawa Hodges and the Illinois Class)**

138. Hodges realleges and incorporates the preceding factual and class allegations to the extent relevant to the Illinois claims as though fully set forth herein.

139. Hodges brings this claim individually and on behalf of the Illinois Class against Defendant.

140. Hodges, Illinois Class Members, and Defendant are persons within the meaning of 815 Ill. Comp. Stat. 505/1(c). Hodges and Illinois Class Members purchased the Products for personal, family, or household use and are consumers within the meaning of 815 Ill. Comp. Stat. 505/1(e).

141. Defendant marketed, advertised, distributed, and sold the Products in the course of trade or commerce within the meaning of 815 Ill. Comp. Stat. 505/1(f).

142. Section 2 of the ICFA prohibits unfair or deceptive practices in trade or commerce, including misrepresentations and the concealment, suppression, or omission of material facts with the intent that others rely on the omission. 815 Ill. Comp. Stat. 505/2.

143. Defendant engaged in deceptive acts and practices by representing that the Products contain "1g Total Sugars" while omitting material information about the additional allulose content alleged above. The Representations are likely to mislead reasonable consumers about the Products' total sugar content.

144. Defendant knew the Products' formulations and allulose content, controlled the challenged labels and advertising, and intended consumers to rely on the Representations in

purchasing the Products. Defendant continued to use the Representations to induce purchases and obtain a price premium.

145. The amount of sugar in the Products was material to Hodges and reasonable consumers. A reasonable consumer would understand "1g Total Sugars" to describe the total amount of sugar in a serving, including ingredients alleged to be sugars under the standards described above.

146. Hodges saw and relied on the "1g Total Sugars" Representation before purchasing, as alleged in the Parties section. The Representation caused her to purchase a Product she otherwise would not have purchased, or to pay more than she otherwise would have paid.

147. The circumstances of Hodges's transaction occurred primarily and substantially in Illinois: she resides in Chicago and purchased the Product at a Walmart store in Chicago, Illinois.

148. Defendant's conduct was also unfair because it caused substantial economic injury by inducing purchases at inflated prices, offended Illinois' policy against misleading food labels and advertising, and provided no countervailing benefit that justified the misleading Representations. Consumers could not reasonably avoid the injury by determining the undisclosed allulose quantity or independently resolving its regulatory classification at the point of purchase.

149. As a direct and proximate result of Defendant's violations, Hodges and Illinois Class Members suffered actual economic damages, including the difference between the price paid and the value of the Products as received, in an amount to be proven at trial. They would have paid less or declined to purchase had the Products' sugar content been truthfully represented.

150. Under 815 Ill. Comp. Stat. 505/10a(a) and (c), Hodges and the Illinois Class seek actual economic damages; punitive damages to the extent justified by the evidence and permitted

by law; appropriate injunctive and other relief; and reasonable attorneys' fees and costs. They do not seek duplicative recovery.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, individually and on behalf of their respective Classes, request judgment against Defendant and the following relief to the extent available under each asserted cause of action:

1. Certification of the California and Illinois Classes under Federal Rule of Civil Procedure 23; appointment of Colby as representative of the California Class and Hodges as representative of the Illinois Class; and appointment of their counsel as Class Counsel;

2. A declaration that Defendant's challenged conduct violates the California statutes asserted by the California Plaintiff and the ICFA asserted by Hodges;

3. Judgment for Plaintiffs and the respective Classes on the claims each asserts;

4. Actual economic damages and, to the extent justified by the evidence and permitted by law, punitive damages for Hodges and the Illinois Class under the ICFA, in amounts to be determined at trial;

5. Pre- and post-judgment interest as permitted by law;

6. Restitution for the California Plaintiff and California Class under the UCL, FAL, and applicable California restitution principles, and restitution for Hodges and the Illinois Class to the extent available under Illinois law, without duplicative recovery;

7. Appropriate injunctive relief under the California Plaintiff's CLRA, UCL, and FAL claims and Hodges's ICFA claim, upon satisfaction of the requirements for that relief, including an order requiring Defendant to cease or correct the misleading Representations; and

8. Reasonable attorneys' fees and costs under Cal. Civ. Code § 1780(e), Cal. Civ. Proc. Code § 1021.5, 815 Ill. Comp. Stat. 505/10a(c), or other applicable authority, as appropriate to each claim, and such other relief as the Court deems just and proper. The California Plaintiff does not presently seek monetary relief under the CLRA apart from recoverable attorneys' fees and costs.

## JURY DEMAND

Plaintiffs, individually and on behalf of their respective Classes, demand a jury trial on all issues so triable.

Dated: November 6, 2026

Respectfully submitted,
/s/ Kevin Laukaitis
**LAUKAITIS LAW LLC**
Kevin Laukaitis
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
Phone: (215) 559-6072
klaukaitis@laukaitislaw.com

Attorneys for Plaintiffs and the Classes

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

SUE COLBY and JAWA HODGES, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ABBOTT LABORATORIES,

Defendant.

Case No. _______________

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## DECLARATION OF SUE COLBY

I, Sue Colby, declare under penalty of perjury as follows:

1. I am the plaintiff in this action. I have personal knowledge of the facts stated in this declaration and could testify competently to them.
2. I reside in Clovis, California.
3. I purchase Glucerna for personal use from a Walmart store in Clovis County. I submit this declaration to stablish the transaction location supporting venue under Civil Code § 1780(d).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 9, 2026, at Clovis, CA.

______________________________
Sue Colby